FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

**DEMORRICE MATTOX**
2511 Arburton Avenue
Baltimore, MD 21230

and

**CHARLENE MATTOX**
2511 Arburton Avenue
Baltimore, MD 21230

    Plaintiffs,

v.

**UNITED STATES OF AMERICA**
**BALTIMORE VA MEDICAL CENTER**
10 North Greene Street
Baltimore, MD 21201

    <u>Serve On:</u>
    **Federal Tort Claims Act Section**
    **Torts Branch/Civil Division**
    **U.S. Department of Justice**
    **1331 Pennsylvania Avenue, NW**
    **National Place Building**
    **Suite 800 North**
    **Washington, DC 20004**

    Defendant.

Case No.: **WDQ13CV0451**

## COMPLAINT

COMES NOW the Plaintiff, Demorrice Mattox, by his attorneys, Thomas C. Summers, Gregory Smouse, and the Law Offices of Peter G. Angelos, PC, and hereby sues Defendant United States of America Baltimore VA Medical Center, and for his cause of action states:

## Jurisdiction and Venue

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

2. The Plaintiff has exhausted his administrative remedies with the Defendant and has filed, and received a denial of his administrative FTCA claim pursuant to 28 U.S.C., §1346(b) and §§2671-2680, otherwise known as the Federal Tort Claims Act ("FTCA"). *See*, Exhibit A, Denial Letter from Department of Veteran Affairs, dated January 2, 2013.

3. At all times relevant herein, Plaintiffs Demorrice Mattox and Charlene Mattox were residents of Baltimore City, Maryland.

4. Pursuant to 28 U.S.C. §1402, jurisdiction and venue are appropriate, as the cause of action and the Plaintiff's residence are both situated in Baltimore.

## Factual Allegations

5. Mr. Mattox, an African American male, has received all of his primary care and treatment from the Defendant Baltimore Veteran's Administration primary care clinic since 1990.

6. Mr. Mattox's medical records indicate that his PSA results were .5 in 2000; 1.2 in 2004; 20.7 in 2010; 22 on 5/24/11; and 32.1 on September 21, 2011.

7. In October 2011, Mr. Mattox was diagnosed with prostate cancer.

8. Prior to, during or intermittently between the documented PSA testing, Mr. Mattox presented to the VA, its agents and/or employees for medical care and treatments to include hematuria, cystoscopy, diabetes and a colonoscopy, all of which required blood tests

and/or other lab work, thereby providing optimal conditions for additional PSA testing and discussions.

9. Although fully informed and aware of Mr. Mattox's family history and other pre-dispositions to prostate cancer, the Defendant VA, its agents and/or employees failed to follow up, order or perform required annual serial PSAs and rectal screening exams on Mr. Mattox even when presented with sufficient medical opportunity, medical symptomology or increasing PSA results which should have dictated further probing.

## COUNT I
### (Medical Negligence)

10. Plaintiff hereby incorporates by reference all of the aforementioned factual allegations as if fully set forth herein.

11. At the time of the events giving rise to this claim, the Plaintiff was at increased risk for prostate cancer because of his age (D.O.B. 12/17/1956), African American race, family history of prostate and other cancers. He was receiving all of his care, primary and otherwise, from the Defendant, at the Baltimore VA Medical Center located at 10 North Greene Street, Baltimore, MD 21201.

12. In addition, at all times relevant herein, the Plaintiff had pre-existing diabetes for which he regularly received blood and other testing, which would have allowed for simple and concomitant PSA (prostate cancer screening test) testing to occur given his increased risk for same.

13. The Plaintiff is a veteran and had been receiving all of his medical care and treatment, including primary care and other medical care from the Defendant since at least the 1990s.

14. It is alleged that at all times relevant herein, the Defendant breached standards of care in failing to order annual, serial PSAs to otherwise rule out prostate cancer and to conduct annual and serial prostate screening rectal exams, allowing the Plaintiff's prostate cancer to progress from a curable to incurable state, leading to his likely premature death.

15. It is alleged pursuant to the administrative denial of this claim, as Exhibit A, and upon information and belief otherwise, that all care rendered to the Plaintiff that is the subject matter of this Complaint was rendered by agents and/or employees of the Defendant acting for and on behalf of the Defendant.

16. As stated, the Plaintiff received and otherwise entrusted all of his medical care, primary care, and/or specialty care, including urological and/or gastroenterological care to the Defendant since at least the 1990s. The Plaintiff, as stated above, was at increased risk for prostate and other cancers.

17. At all times relevant herein, individuals with the Plaintiff's age, race, history are known to be at increased risk for prostate cancer, and therefore annual serial PSAs and rectal exams were required by the standards of care.

18. Per the Defendant's records, the Defendant ordered and otherwise had performed PSAs in May 16, 2000 and December 16, 2004 which were .5 and 1.2, respectively, or otherwise within normal limits.

19. Despite Mr. Mattox's increased risk status for prostate cancer, negligently no PSAs nor rectal examinations of the prostate occurred between December 16, 2004 and November 18, 2010.

20. It is alleged that the failure to perform PSAs and rectal examinations of the prostate during this period of time was in violation of acceptable standards of care for any

physician caring for and/or treating a patient with Mr. Mattox's age, race and history, as stated above.

21. In February, 2008, Plaintiff sought care from the Defendant through its agents or employees for a new complaint or onset of hematuria, or blood in the urine. At various times over the next several weeks, and through, to and including May 2008, the Plaintiff underwent various testing and procedures, including cystoscopy for hematuria, but in violation of standards of care, no PSA testing was performed.

22. On or about March 27, 2008, a suggestion for a PSA was made by Justin Sausville, by the inappropriate and negligent instruction to simply "stop by the lab" to have his PSA drawn.

23. Despite multiple medical visits after the cystoscopy to Defendant and/or its agents or employees, no further discussion or order for a PSA was undertaken by Defendant.

24. At a visit on May 1, 2008, discussion of the results of the cystoscopy occurred. Negligently, and contrary to acceptable standards of care, no further discussion, request or order for PSA occurred, despite an earlier suggestion to "stop by" for one. Negligently, the cause of the hematuria was not determined, a planned PSA was not obtained, and its omission was not noticed.

25. Additionally, a colonoscopy was undertaken, which was also negative. Again, no request for a PSA or further follow up and work up of the unexplained etiology of the hematuria occurred, in violation of acceptable standards of care.

26. Notes in the records of the Defendant on the Plaintiff during this time period reveal statements by agents and their employees of Defendant that the Plaintiff had not had a PSA since 2004. Despite regular blood tests that were performed at the Defendant's facility for

monitoring of Plaintiff's diabetes, no PSA was drawn in February-May 2008, despite the complaint of hematuria, and while the Plaintiff was hospitalized in the Defendant's facilities and under their care.

27. It is alleged that during all of the above and below time periods, the Plaintiff was under the care of the Defendant for his primary care. It is alleged throughout the time periods alleged herein, numerous healthcare providers, as agents and/or employees of the Defendant, failed to order serial and annual PSAs or perform rectal exams, to rule out the cause of the Plaintiff's hematuria, and otherwise work-up, diagnose, and timely treat the Plaintiff for prostate cancer, in violation of acceptable standards of care.

28. It was not until November 18, 2010, after the passage of almost 6 years, that the Plaintiff had another PSA test performed by the Defendant. No stated reason for this test being performed at this point is indicated in the Defendant's records. The PSA was significantly elevated at 20.7.

29. However, negligently and contrary to acceptable standards of care, no follow up for this significantly elevated and alarming PSA occurred, despite clear and concerning indications of prostate cancer under the circumstances prevailing.

30. Another PSA was drawn on May 24, 2011 by the Defendant and now was further elevated to 22. Again, negligently and contrary to acceptable standards of care, no follow up or further care and treatment was undertaken by the Defendant for these two significant, concerning and elevated PSAs.

31. The standards of care under these circumstances require that physicians and other healthcare providers at the Baltimore VA determine the etiology of rising and elevated PSAs

and/or the hematuria through referral to a urologist for biopsy or other testing to rule out prostate cancer.

32. On September 21, 2011, the Defendant drew another PSA which was now highly elevated and had risen precipitously to 32.1. Finally, the Plaintiff was referred to urology, surgical and oncology specialists for follow up and work-up of elevated PSAs with a concern for the likelihood of prostate cancer.

33. A prostate biopsy performed on October 20, 2011 revealed the presence of prostate cancer, which had been present for several years prior to this diagnosis.

34. The diagnosis was of a high grade prostate cancer with a PSA of 32 for which surgery was now not indicated. The Plaintiff received radiation and chemotherapy, including the implantation of brachytherapy seeds.

35. It is alleged that had standards of care been followed by the Defendant with the performance of serial and annual PSA rectal exams beginning in 2005 and thereafter until the PSA in November 2010, the lab results of the PSAs would have revealed a rising and elevated PSA over that period of time.

36. Standards of care under the circumstances would have required follow up or work-up for potential prostate cancer including prostate biopsy, which negligently did not occur until October 2011 when the prostate cancer had advanced to a point where surgery could not be performed and the chances of survival were greatly deminished.

37. With reasonable medical probability, more likely than not, if the Plaintiff had PSAs performed by the Defendant beginning in 2005, the PSA levels would have progressively risen over the next several years prior to Mr. Mattox's delayed diagnosis of prostate cancer in October 2011, and he would have had follow up, biopsy and treatment of his prostate performed

which would have revealed an earlier stage of the cancer and allowed for treatment and surgery and the probability and likelihood of survival higher than 50%.

38. However, the Plaintiff's prostate cancer diagnosis was delayed at least several years prior to October 2011, which passage of time allowed the prostate cancer to progress to a point where surgery could not be performed, and he could no longer be cured and/or effectively treated for his prostate cancer.

39. As a result of the long and significant delay in the diagnosis and treatment of the Plaintiff's prostate cancer, Mr. Mattox is at an advanced stage of prostate cancer.

40. As a result of the negligent delay in the diagnosis and treatment of Mr. Mattox's prostate cancer, and because of the degree of elevation of his PSA (32.1ng/ml), and a high Gleason score of 8 (4+4), Mr. Mattox is in a high risk group for prostate cancer with less than 50% chance of 5 year survival with the likelihood of metastases.

41. Because of the long delay in the diagnosis and treatment of the Plaintiff's prostate cancer as stated hereinabove and hereinbelow, due to the negligence of the Defendant in regard to same, Mr. Mattox's 5 year survival, even in the absence of metastases, is 30%. With likely metastases, it is substantially lower.

42. Had Mr. Mattox been appropriately diagnosed and treated for his prostate cancer in February 2008, at the time of his evaluation for hematuria, to a reasonable degree of medical probability, an elevated PSA would have been identified which would have led to a diagnosis of prostate cancer in an early, treatable state.

43. Had the Plaintiff had a PSA reading performed at the time of the evaluation for hematuria in February 2008 and thereafter, and had his elevated PSA been followed with biopsy

8

in November 2010, Mr. Mattox would have had a significantly higher chance or probability of cure, and certainly greater than 50%.

44.   As a result of the breaches in the standard of care in delaying the diagnosis and treatment of the Plaintiff's prostate cancer for several years, Mr. Mattox's cancer is not curable and he has less than 50% chance of survival.

45.   The Plaintiff will likely die from prostate or metastatic cancer which was diagnosable and treatable for many years prior to its eventual delayed diagnosis in late 2011.

46.   It is alleged that as a result of the negligence of the Defendant and/or its agents and employees as stated hereinabove and hereinbelow, Plaintiff has been injured and damaged. He has suffered emotional and mental distress over his incurable prostate cancer, the inexcusable delay in the diagnosis and treatment of same, and has incurred expenses, requires care and treatment, assistance in activities of daily living, and has otherwise been injured and damaged physically, mentally, emotionally, mentally, economically and non-economically.

47.   It is alleged that all of the above injuries and damages were as a direct and proximate result of the negligence of the Defendant through it agents and/or employees, without any negligence on the part of the Plaintiff contributing thereto.

WHEREFORE, Plaintiff, Demorrice Mattox, demands judgment against Defendant United States of America Baltimore VA Medical Center, in the sum of Two Million ($2,000,000.00) Dollars, plus interest and costs.

### COUNT II

### (Informed Consent)

48.   The Plaintiff repeats herein all of the above as if the same were repeated verbatim.

49. It is alleged that at no time was the Plaintiff advised of his high risk for prostate cancer, the need for prostate screening, rectal examinations and/or PSAs, or the results of the PSAs that were performed.

50. It is alleged that had the Plaintiff been appropriately informed of the need for same and work-up for possible or potential prostate cancer, given his age, race, family history and the need for and/or the elevated PSAs which were eventually performed, he would have requested appropriate work-up, follow up and treatment of his prostate cancer so as to avoid the injuries and damages claimed hereinabove and hereinbelow.

WHEREFORE, Plaintiff Demorrice Mattox demands judgment against Defendant United States of America Baltimore VA Medical Center, in the sum of Two Million ($2,000,000.00) Dollars, plus interest and costs.

## COUNT III
### (Loss of Consortium)

51. The Plaintiffs repeats herein all of the above as if the same were repeated verbatim.

52. It is alleged that the Plaintiffs are husband and wife.

53. As a result of the negligence of the Defendant through its agents and/or employees as stated hereinabove, the Plaintiffs have suffered interruption and injury and damage to their marital relationship, and claim all available damages under Maryland's loss of consortium laws.

WHEREFORE, Plaintiffs, Demorrice Mattox and Charlene Mattox, demand judgment against Defendant United States of America Baltimore VA, in the sum of Two Million ($2,000,000.00) Dollars, plus interest and costs.

Respectfully submitted,

_____
Thomas C. Summers
Federal Bar No.: 00602
LAW OFFICES OF PETER G. ANGELOS
*A Professional Corporation*
100 North Charles Street, 22nd Floor
Baltimore, Maryland 21201
(410) 649-2000
*Attorneys for the Plaintiffs*

_____
Gregory R. Smouse
Federal Bar No.: 24464
LAW OFFICES OF PETER G. ANGELOS
*A Professional Corporation*
100 North Charles Street, 22nd Floor
Baltimore, Maryland 21201
(410) 649-2000
*Attorneys for the Plaintiffs*